* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 * * * * * * * * * * *
On December 11, 2007, plaintiff filed a Motion to Compel Production of Wage Records. Defendants filed a response on December 14, 2007. On December 31, 2007, an Order was filed by the Industrial Commission holding plaintiff's motion in abeyance until consideration by the *Page 2 
Full Commission. The Full Commission hereby denies plaintiff's Motion to Compel Production of Wage Records.
 * * * * * * * * * * * EVIDENTIARY MATTERS
At the hearing before the deputy commissioner, plaintiff submitted the following:
 a. A December 10, 2003 medical note from Dr. Frederick Benedict, which was admitted into the record and marked as Plaintiff's Exhibit (1), and;
 b. An August 30, 2005 note from Dr. Frederick Benedict, which was admitted into the record and marked as Plaintiff's Exhibit (2).
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of the parties and of the subject matter of this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the date of injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On all relevant dates, an employment relationship existed between plaintiff-employee and defendant-employer.
5. On all relevant dates, American Protection Insurance was the compensation carrier on the risk. *Page 3 
6. On all relevant dates, plaintiff's average weekly wage was $577.13 as per the Form 60.
7. Plaintiff's date of injury was November 16, 2000.
8. Plaintiff was paid a twenty percent (20%) permanent partial disability rating to the left knee pursuant to an Industrial Commission Form 21 Agreement for Compensation which was approved by Commission on August 6, 2004.
9. At the hearing before the deputy commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms and Filings, which was admitted into the record and marked as Stipulated Exhibit (3), and;
 c. A Packet of Medical Billing Records, which was admitted into the record and marked as Stipulated Exhibit (4).
10. The issues for determination are as follows:
 a. whether plaintiff has sustained a change of condition;
 c. whether plaintiff's right knee and back conditions have been aggravated by compensating for his compensable left knee injury;
 d. whether plaintiff's current job with defendant-employer is suitable employment, and;
 e. whether plaintiff is entitled to additional indemnity and medical compensation.
 * * * * * * * * * * * *Page 4 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. As of the hearing date, plaintiff was forty-eight (48) years of age with his date of birth being March 29, 1959. Plaintiff has a GED and his work history includes working as a grocery bagger, at a fast food restaurant, as a postage meter operator, a dishwasher, and as a cook.
2. Plaintiff began his employment with defendant in 1995. Defendant manufactures large refrigerating equipment. Initially, plaintiff worked for defendant in shipping and receiving and later moved to the engineering section, logging material on a list corresponding with products being built.
3. On November 16, 2000, plaintiff was moving materials with a forklift when he heard a nearby telephone ringing. As he got off the forklift to answer the phone, plaintiff slipped on glass beads that were on the floor and twisted his left knee, experiencing the immediate onset of pain. The compensability of this incident and plaintiff's left knee injury was accepted by defendants through the filing of an Industrial Commission Form 60.
4. Plaintiff's relevant pre-existing condition is that he is bilaterally bowlegged, a condition that puts pressure on the inner half of the knee and makes him more likely to develop problems in the inner half of the knee.
5. Following plaintiff's November 16, 2000 incident in question, plaintiff initially sought medical treatment from his family physician, Dr. Robert Resnik, who referred plaintiff to Dr. Frederick Benedict, an orthopaedic surgeon. Dr. Benedict first examined plaintiff on January 11, 2001 and pursued conservative treatment, prescribing medication and a knee brace. *Page 5 
6. Thereafter, plaintiff returned to work for defendant, but continued to experience left knee pain. With these ongoing symptoms, Dr. Benedict ordered an MRI, which revealed a medial meniscus tear and arthritis in the inner compartment of plaintiff's left knee. Thereafter, Dr. Benedict performed arthroscopic surgery on plaintiff's knee in March 2001, debriding the meniscus tear and removing a loose body.
7. Following this initial surgery in March 2001, plaintiff was out of work for approximately one month, returning in April 2001 to light duty work. Upon returning to work, plaintiff's left knee condition worsened. Additionally, plaintiff contends that because he was physically compensating for his left knee condition, he developed problems with his right knee and back, including swelling and pain.
8. On October 8, 2001, Dr. Benedict performed a tibia osteotomy procedure on plaintiff's left knee to address an arthritic condition. This procedure straightened plaintiff's bowlegged left leg condition and was designed to relieve pressure on the inside of the knee. Thereafter, plaintiff was out of work six months, but continued to experience left knee pain. Plaintiff's left leg atrophied during his post surgical recovery period.
9. Subsequent to his surgical recovery period, plaintiff returned to work for defendant with restrictions in the shipping and receiving section. Plaintiff has testified that upon returning to work, his duties required him to work on concrete, use stairs, stand and walk, activities which worsened his left knee pain, as well as his right leg and back conditions.
10. In September 2002, Dr. Benedict performed another left knee arthroscopy and removed hardware from plaintiff's left knee area. Following this procedure, plaintiff was released to return to work on a limited basis with a gradual increasing of his hours. Plaintiff continued to experience left knee pain due to his arthritis. *Page 6 
11. On June 11, 2003, Dr. Benedict assigned a twenty percent (20%) permanent personal disability rating to plaintiff's left leg. Pursuant to an approved Industrial Commission Form 21 Agreement for Disability, defendants paid all compensation based upon this rating and accrued total disability compensation. Additionally, Dr. Benedict assigned plaintiff permanent restrictions of lifting no more than fifty (50) pounds, limited squatting, kneeling and stooping, along with limited ladder and stair climbing.
12. As of the date of the closing of the record in this matter, Dr. Benedict has not medically excused plaintiff from work.
13. Plaintiff contends that his current job in defendant's shipping and receiving section is not suitable given plaintiff's required duties and permanent restrictions. Defendants assert that plaintiff's duties have been modified to accommodate the restrictions assigned by Dr. Benedict in 2003. Defendants assert that if plaintiff occasionally exceeded his restrictions, he does so voluntarily and not at defendant's insistence.
14. In 2004, Dr. Benedict recommended that plaintiff obtain a job with lighter duties and has explained that plaintiff's work on a concrete floor all day was hard on his joints. Dr. Benedict recommended that plaintiff undergo a vocational assessment and potential retraining to avoid working on concrete floors and in a job that requires climbing stairs.
15. Dr. Benedict has opined, and the undersigned find as fact that plaintiff's left knee condition will likely continue to worsen in the future and has worsened since Dr. Benedict first began treating plaintiff. Additionally, Dr. Benedict has opined, and the undersigned find as fact, that plaintiff's work with defendant has, more likely than not, contributed to the ongoing deterioration of plaintiff's left knee. *Page 7 
16. Plaintiff testified that when he gets home after work, he lies down, elevates his leg, and use a TENS unit for pain relief. The quantity of pain medication plaintiff has taken since August of 2004 has increased. Dr. Benedict has testified that since August 2004, plaintiff has required between twenty-five percent (25%) and fifty percent (50%) more pain medication due to his worsening left knee condition.
17. Plaintiff experiences swelling and pain in his right leg, right knee, and back. His back condition has resulted in radiating pain down the right leg and numbness in the right thigh. Dr. Benedict has opined that due to his left knee injury and related change of gait, greater stress was placed on plaintiff's right knee and back.
18. Based upon the credible evidence of record, the undersigned find that plaintiff's right knee and back conditions are the direct and natural result of and causally related to plaintiff's November 16, 2000 left knee injury by accident. Dr. Benedict has testified that since August 2004, plaintiff's right knee and back conditions have worsened.
19. Dr. Benedict has testified that in addition to his previously assigned restrictions, plaintiff should be allowed to take frequent breaks during his workdays.
20. Dr. Benedict initially opined that although plaintiff's condition has changed since August 2004, the change was not substantial. However, upon considering plaintiff's increased pain level and increased use of pain medications, Dr. Benedict opined that plaintiff's change of condition was in fact substantial.
21. Based upon the credible evidence of record, plaintiff has experienced a substantial change of condition in his left knee, right knee and back since August 2004, when defendants paid permanent partial disability compensation to plaintiff. *Page 8 
22. Plaintiff sustained a work-related right knee injury on March 8, 2007. At the time of this incident, defendant-carrier was not on the risk. Dr. Benedict opined and the undersigned find as fact, that it is impossible to apportion the contributions of the March 8, 2007 incident and the aggravation caused by plaintiff's altered gait to his current right knee condition.
23. Plaintiff has not reached maximum medical improvement from his compensable right knee and back conditions.
24. Since returning to work, plaintiff has testified that his paid working hours and overall pay has been reduced. Plaintiff possesses a key to defendant's premises and asserts that he has had to work off the clock in order to complete his assigned tasks.
25. There is insufficient evidence of record upon which to find that plaintiff's wages have been reduced since his return to light duty work.
26. There is insufficient evidence of record upon which to find that plaintiff's job upon returning to work with permanent restrictions is unsuitable.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Based upon the credible evidence of record, the undersigned conclude that plaintiff's right knee and back conditions are the direct and natural result of and causally related to his November 16, 2000 left knee injury by accident. N.C. Gen. Stat. § 97-2(6).
2. Based upon the credible evidence of record, plaintiff has experienced a substantial change of condition in his left knee, right knee and back since August 2004, when defendants paid permanent partial disability compensation to plaintiff. N.C. Gen. Stat. § 97-47. *Page 9 
3. Since there is insufficient evidence of record upon which to conclude that plaintiff's wages have been reduced since his return to light duty work, plaintiff is not entitled to temporary partial disability compensation. N.C. Gen. Stat. § 97-30.
4. There is insufficient evidence of record upon which to conclude that plaintiff's job upon returning to work with permanent restrictions is unsuitable. Shah v. Howard Johnson, 140 N.C.App. 58, 68,535 S.E.2d 577, 583 (2000), disc. review denied, 353 N.C. 381, 547 S.E.2d 17
(2001).
5. As a result of his causally related right knee and back conditions, as well as the change of condition to his right knee, back and left knee, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including related treatment as recommended by Dr. Benedict, who is hereby designated as plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for change of conditions to his left knee, right knee and back are hereby approved.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his causally right knee and back conditions, as well as the change of condition to his right knee, back and left knee, subject to the provisions of N.C. Gen. Stat. §97-25.1, including related treatment as recommended by Dr. Benedict, who is hereby designated as plaintiff's authorized treating physician. *Page 10 
3. Plaintiff's claim for disability benefits is DENIED.
4. Defendants shall pay the costs.
This the 22nd day of February, 2008.
S/______________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/______________________ DANNY L. McDONALD COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1